S. Schuyler Hammett *et ux vs.* Walter A. Wright.
Charles D. Easton *vs.* Walter A. Wright.
J. R. Lorah & Co. *vs.* Walter A. Wright.
Edward A. Brown Co. *vs.* Walter A. Wright.
Mary L. Clark *vs.* Walter A. Wright.
Samuel W. March *vs.* Walter A. Wright.
George Stanhope *vs.* Walter A. Wright.

JUNE 3, 1918.

Present: Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

(1) *Wills.*

Under a testamentary provision for the widow, of all of the estate of testator, " to have and use and enjoy during her lifetime . . . it being my desire and intent to fully provide for her maintenance and comfort, her medical attendance and every want that can be provided for her," claims of creditors who furnished medicines and household supplies, as well as those of the doctor and nurse in the last illness of the widow, should be paid by the executor of testator, before any distribution to heirs or legatees

(2) *Wills. Vested Estates with Payment Postponed.*

Testamentary bequest provided that "After the decease of my wife, I direct (all funeral expenses and other indebtedness having been paid) that all my property of every kind shall be sold and from the aggregate amount of said sales that the sums herein specified be paid." After bequests of various amounts testator bequeathed the residue, providing "it is my express intention that all legacies which may lapse by reason of death or refusal of the legatees named therein to accept shall revert to and become a part of the residue."

*Held,* that the legacies given to those who deceased prior to the death of the widow, vested in them upon the decease of the testator, the payment thereof being postponed during the life of the widow.

PROBATE APPEALS.   Heard on certification on agreed statement of facts.

VINCENT, J.   These are appeals from a decree of the Probate Court of Newport allowing the final account of Walter A. Wright as executor under the will of John Henry Tilley, late of said Newport, deceased, and are certified to this court upon an agreed statement of facts.   The facts agreed upon and the questions raised in these appeals are identical and involve the construction of certain provisions of the will of the said John Henry Tilley.   These provisions are as follows:

"First, I give everything of which I am possessed, real estate and personal property, at the time of my decease, to my wife, Louise Hammett Tilley, to have and use and enjoy during her lifetime, together with all interest, dividends, rents and other income which should have been receivable by me if living.   It being my desire and intent to fully provide for her maintenance and comfort, her medical attendance and every want that can be provided for her.

"Secondly, After the decease of my said wife, Louise Hammett Tilley, I direct (all funeral expenses and other indebtedness having been paid) that all my property of every kind shall be sold to the best advantage, and from the aggregate amount of said sales that the sums herein specified be paid to the persons herein, as follows, to wit:"   .   .   .

After bequests of money, in various amounts, to some twenty different persons the testator bequeaths to Mary S. Martin, Elizabeth R. Smith, Eliza S. Hammett and S. Schuyler Hammett "all the rest, residue and remainder of my estate, to be equally divided between them" and concludes by saying, "It is my express intention and desire that all legacies which may lapse by reason of death or refusal of the legatees named herein to accept shall revert to and become a part of the residue of my said estate."

The will of the testator was executed February 22, 1907, and he died September 21, 1907.   His wife, Louise Hammett

Tilley, died January 20, 1917. Four of the legatees, Ris-brough H. Tilley, Martha King, Benjamin Weaver and Mary S. Martin, the latter being one of the residuary legatees, died after the testator and prior to the death of the widow, Louise Hammett Tilley.

Six of these appeals are taken by creditors including the doctor and nurse who attended Louise Hammett Tilley in her last illness, the druggist who furnished medicines and two merchants who furnished household supplies. The remaining appeal is taken by S. Schuyler Hammett and Eliza S. Hammett, his wife, as residuary legatees. Two questions are presented for consideration: (1) Should the executor pay the claims of the appellant creditors, before making distribution to the legatees, and (2) Are the legacies bequeathed to those who predeceased the widow, Louise Hammett Tilley, now payable to their estates or descendants or have they lapsed and become a part of the residuary estate?

In and by the first clause of his will the testator gives to his wife, Louise Hammett Tilley, a life estate in all of the real and personal property of which he may die seized and possessed. With the apparent purpose of more clearly and positively expressing his intention that his wife should have as liberal an enjoyment of the estate during her life as the nature thereof would permit, the testator added the words, "It being my desire and intent to fully provide for her maintenance and comfort, her medical attendance and every want that can be provided for her."

In the second clause of the will the testator provides that after the decease of his wife and after the payment of her funeral expenses and other indebtedness his property should be sold and the legacies paid.

It is the generally accepted rule that the intent of the testator must be carried out whenever such intention can be determined from the terms of the will and is not in violation of any established rule of law.

(1)    The testator must have been mindful of the probability, not to say reasonable certainty, that, upon the decease of his wife, bills incurred during her last illness would be left outstanding and it would be fair to presume that he desired and intended that such bills should be paid. We do not need, however, to rely upon presumption. The language which the testator has employed seems to us to show a clear intention on his part that all such claims should be satisfied out of his estate and that such satisfaction should precede any distribution to heirs or legatees. We think that these accounts, if found correct, should be paid by the executor.

Upon the second question, as to what becomes of the legacies given to those who have predeceased the widow, Louise Hammett Tilley, it is argued that the general policy and scheme of the will, as a whole, show that it was the intention of the testator that the legacies should vest only in such of the legatees as should survive the widow, Louise Hammett Tilley, for the reason that they are not payable until after her decease and not then except upon the fulfillment of two specific conditions; (1) the payment of her funeral expenses and other indebtedness and (2), the conversion of the property into cash, thereby creating a new fund out of which such legacies should be paid and therefore they do not constitute gifts of certain amounts, with time of payment postponed, but are gifts out of a specific fund to be created at a future date and after the happening of a certain event.

In support of this argument the case of *Luttgen* v. *Tiffany*, 37 R. I. 416, is cited. We think that case however differs materially from the case at bar. In that case the testator gave "all of my estate which may be remaining in the hands of my said trustee at the time of the decease of my said wife, to my children" etc. As the court said, it is the estate "remaining in the hands of my said trustee at the decease of my said wife" which is given to the children, and not the estate of which the testator was seized and possessed at the time of his death. In that case the will also further pro-

vided for the inclusion of any after-born children should there be any and the court held that "it was the plain intention of the testator to have the estate remaining in the hands of the trustee at the widow's death distributed among a class composed of his children living at the death of the widow and the issue of a deceased child or children, if any, living at that time. The members of this class can not be ascertained until the death of the widow." This is a different situation from that presented by the case at bar where the testator disposes of the estate of which he died seized and possessed and not the estate "remaining in the hands of the trustee at the time of the decease" of the wife as in the *Luttgen* case, *supra*.

We think that the several legacies given to those who deceased prior to the death of the widow, Louise Hammett Tilley, vested in them upon the decease of the testator, John Henry Tilley, the payment thereof being postponed during the life of Louise Hammett Tilley. *Chafee* v. *Maker*, 17 R. I. 739; *Caswell* v. *Robinson*, 21 R. I. 193.

(2) In considering that portion of the will which says, "it is my express intention and desire that all legacies which may lapse by reason of death or refusal of the legatees named herein to accept shall revert to and become a part of the residue of my estate" we do not find anything therein which can reasonably be construed as an intention on the part of the testator to defer the vesting of these legacies until the death of Louise Hammett Tilley. It seems to us that that portion of the will is simply precautionary and designed to refer to any legacy which might be refused or the payment of which might through circumstances become impossible. It may be that upon any refusal, or impossibility of payment, the legacy would naturally fall into the residuary estate without the expressed intention of the testator to that effect but even taking that view of it we cannot see that such expression can be construed as evidencing a purpose to defer the vesting of the legacies until a future time.

We do not see that any new fund would be created by a sale of the property out of which the legacies should be paid nor can we see that such provision is expressive of any intent on the part of the testator that the legacies should not vest until the death of his wife. The sale of the property was simply directory and a necessary step in carrying out the intention of the will. It was the only practical way in which the executor could obtain the funds with which to pay the several gifts which the will required him to do. This court held *In re Petition of William M. Holder,* 21 R. I. 48, that where an executor was directed by will to sell real estate, pay over two-fifths of the proceeds to A. and distribute the remainder equally among B. C. and D., and where B. died after the testatrix but before the division that B. C. and D. took equally and that the direction for a sale operated as an equitable conversion of the real estate into personalty and is deemed to have been made from the time of the testatrix's decease.

It is our decision that the appellant creditors are entitled to the payment of their lawful claims out of the estate of John Henry Tilley and that the bequests to Risbrough H. Tilley, Martha King, Benjamin Weaver and Mary S. Martin became vested in them upon the decease of the testator, John Henry Tilley.

The papers in the several cases with our decision certified thereon are sent back to the Superior Court for the county of Newport for further proceedings.

*Burdick & MacLeod, Sheffield & Harvey,* for appellants.
*Charles R. Easton,* for Charles D. Easton.
*Charles H. Koehne, Jr.,* for Edith M. Tilley, Admx.